IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **AVENUE 33, LLC**, a New York limited liability company,<br><br>       Plaintiff,<br><br>    v.<br><br>**AVENTURINE CAPITAL GROUP, LLC**, a Delaware limited liability company,<br><br>       Defendant. | Case No. 3:23-cv-896-YY<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

United States Magistrate Judge Youlee Yim You issued Findings and Recommendation (F&R) in this case on January 16, 2024. Judge You recommended that this Court grant in part and deny in part Plaintiff Avenue 33, LLC's Motion for Entry of Default Judgment and Award of Attorney Fees and Costs. Judge You recommended that this Court enter judgment for Plaintiff and against Defendant Aventurine Capital Group, LLC on Plaintiff's breach of contract claim for: (1) the principal sum of $84,406.90 plus prejudgment interest at 12 percent *per month, compounded monthly*, from July 6, 2022 until entry of judgment; (2) attorney's fees of $55,510.15 and costs of $2,757.25; and (3) post-judgment interest at 12 percent *per month* on the principal, attorney's fees, and costs from the date of the entry of judgment until paid in full. Finally, Judge You recommended that any other requests for fees or costs should be denied. No party has filed objections, but Defendant has never appeared.

PAGE 1 – ORDER

On March 8, 2024, the Court gave Plaintiff leave to file an optional supplemental memorandum related to the rate of prejudgment and post-judgment interest. Plaintiff filed a supplemental brief on March 22, 2024.

## A. Legal Standard

Under the Federal Magistrates Act (Act), the court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." 28 U.S.C. § 636(b)(1). If no party objects, the Act does not prescribe any standard of review. *See Thomas v. Arn*, 474 U.S. 140, 152 (1985). Although review is not required in the absence of objections, the Act "does not preclude further review by the district judge[] *sua sponte* . . . under a *de novo* or any other standard." *Id.* at 154.

## B. Background

The Court has reviewed *de novo* the F&R and supporting record evidence. Before filing this lawsuit in federal court, the parties litigated in Multnomah County Circuit Court issues related to Defendant's alleged failure to pay amounts due to Plaintiff. *See generally* Stone Decl. Ex. 1 (Multnomah County Complaint) (ECF 17-1). During that litigation, the parties, through their attorneys, reached a negotiated Settlement Agreement, which Defendant later refused to sign. *See* Stone Decl. ¶ 2 (ECF 17). Plaintiff moved to enforce the Settlement Agreement, and on December 22, 2022, Multnomah County Circuit Court Judge Katharine von Ter Stegge found that Defendant's attorney had apparent authority to bind Defendant to the negotiated agreement, ordered a designee of Defendant to sign the Settlement Agreement dated June 27, 2022, and subsequently entered a judgment dismissing the Multnomah County case. *See* Stone Decl. Ex. 4 (Order Granting Plaintiff's Motion to Enforce Settlement Agreement) (ECF 17-4); Stone Decl. Ex. 5 (General Judgment of Dismissal) (ECF 17-5).

The June 27, 2022 Settlement Agreement includes a term stating that Defendant "agrees to pay the Promissory Note ('Note') . . . , which is incorporated by reference herein." Stone Decl. Ex. 2 (ECF 17-2). Paragraph 2.2 of the Promissory Note (which the Court sometimes refers to as simply the "Note"), in turn, states: "On and after an event of default under this Note: interest will accrue on the amount stated in paragraph 1.2 at a rate of 12% per month, compounded monthly." Stone Decl. Ex. 3 (ECF 17-3). In turn, paragraph 1.2 of the Note states in full: "In the event of default under this Note, the principal sum will increase to $84,406.90." *Id.* Paragraph 6.2 provides that an event of default occurs if the "Obligor fails to pay the entirety of this Note on or before July 5, 2022." *Id.* Thus, by the time that the Multnomah County Circuit Court ordered Defendant to sign the Settlement Agreement on December 22, 2022, the Promissory Note already was in default and had been for nearly six months.

As stated, Judge You recommended that the Court award prejudgment and post-judgment interest on the Note's principal sum at the rate of 12 percent *per month, compounded monthly*. The Court became concerned that the total amount awarded under the stated interest rate term would result in an award grossly disproportionate to the principal sum of $84,406.90. The Court requested supplemental argument and legal authority justifying the extraordinary rate of interest sought, and Plaintiff submitted a supplemental brief.

**C. Discussion**

    **1. Rate of Interest**

Twenty-one months after an event of default, if calculated in accordance with the terms of the Promissory Note, the interest on the principal sum of $84,406.90 totals $827,512.45. Twenty-four months after an event of default, if calculated in accordance with terms of the Promissory Note, the interest on the principal sum of $84,406.90 totals an *eye-popping* $1,196,774.14. Put differently, the Note's stated interest rate of 12 percent *per month,*

PAGE 3 – ORDER

*compounded monthly*, amounts to an annual interest rate equivalent to about 290 percent for the first year, and an interest rate of *about 1,418 percent* from the date of default through the end of the second year. In Plaintiff's supplemental briefing, Plaintiff offers several arguments in support of this extraordinary interest rate. The Court briefly addresses Plaintiff's arguments before discussing whether to enter default judgment in this case in the amount sought.

Plaintiff argues first that the Court is prohibited under the *Rooker-Feldman* doctrine from exercising subject matter jurisdiction over the issue of the enforceability of the Note's interest rate. Under the *Rooker-Feldman* doctrine,[1] federal courts lack jurisdiction to hear cases that amount to collateral attacks on state court judgments. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1142-43 (9th Cir. 2021). The Court is not persuaded, however, that the issue of the enforceability of the Promissory Note amounts to a collateral attack on the state court's judgment. Even if Defendant had appeared in this action and raised the issue of enforceability, this would not constitute a request to set aside the state court's judgment. *See Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003) ("The *Rooker-Feldman* doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion." (quoting with approval *GASH Assocs. v. Village of Rosemont*, 995 F.2d 726, 728-29 (7th Cir. 1993))). An evaluation of the enforceability of the Note's interest rate term is not a *de facto* appeal that is prohibited by the *Rooker-Feldman* doctrine.

---

[1] The *Rooker-Feldman* doctrine takes its name from *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

PAGE 4 – ORDER

Second, Plaintiff argues that the interest rate sought is enforceable because the term is not subject to the limitations under Oregon Revised Statutes (ORS) § 82.010. Subsection (3) of ORS § 82.010 prohibits interest rates in excess of 12 percent per year, or 5 percent in excess of the discount rate, only on specific types of loans. The Court agrees that subsection (3), on its face, does not apply under these circumstances. *See* ORS § 82.010(3) (limiting the lawful interest rate for specified types of loans for $50,000 or less). Plaintiff contends that the statutory interest rate under subsection (1) does not impose a limitation on the Note's interest rate because Oregon courts routinely enforce contracts that provide a higher rate of interest than the rate provided by statute. Plaintiff cites a variety of cases in support of this statement. None of Plaintiff's cited cases, however, approve an annual interest rate equivalent to about 290 percent for the first year alone and rising exponentially thereafter, which is the case here. Thus, even though the Note's interest rate term is not *invalidated* by ORS § 82.010, the Court is not persuaded that the non-applicability of Oregon's statutory interest limitation goes far enough to *justify* the Note's interest rate term of 12 percent per month.

Plaintiff next argues that the doctrine of issue preclusion prevents the Court from reexamining the enforceability of the Note's interest rate term. Because there is no evidence that the interest rate term was actually litigated or was essential to the state court's judgment, however, the Court is not persuaded that issue preclusion applies to this matter.

Plaintiff also argues that the interest rate term is not void as a penalty because the interest rate term is not a liquidated damages clause. Plaintiff further argues that, even if it is a liquidated damages clause, the clause is valid under Oregon law because the 12 percent *per month* default interest rate represents Plaintiff's "anticipated and actual harm" if the Note was breached. Notwithstanding Plaintiff's purely conclusory assertions as to why damages currently totaling

almost one million dollars, accruing exponentially each month, are necessary to return the parties to the status quo in the event of a breach and thus are not a penalty, the Court concludes that the interest rate term is void as a penalty.[2] Finally, Plaintiff asserts that claim preclusion prevents the Court from striking the Promissory Note's interest rate term as an unlawful penalty.[3]

Even if the Court were constrained in its ability to blue pencil the Promissory Note's interest rate under a formalistic application of the claim preclusion doctrine, there is no doubt that the Court would still be empowered to deny Plaintiff's motion for entry of default judgment. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe*

---

[2] In a recent case that is closely analogous, the Chancery High Court of England and Wales examined a virtually identical interest rate term in a loan contract and came to the same conclusion. That court observed:

> Ahuja would by now owe the following sums on an initial loan of £800,000 taken out only some 30 odd months ago:
>
> (a) As at 14 June 2021: £23,862,975.83;
>
> (b) As at 21st July 2021: £26,825,412.94;
>
> (c) As at 21st August 2021: £30,143,342.48
>
> There is said to be no evidence which would seek to justify that level of default interest. No legitimate interest has been identified other than the penalising of a breach by the failure to repay the principal on the redemption date.

*Ahuja Invest. Ltd. v. Victorygame Ltd.* [2021] EWHC (Ch) 2382 [135]. In that case, the court was "satisfied that a default interest rate of 12 percent per month, compounded monthly, . . . is properly to be characterised as a penalty." *Id.* at [142].

[3] Under the doctrine of claim preclusion, a party is foreclosed from litigating the same claim "on any ground or theory of relief that the party could have litigated in the first instance." *Bloomfield v. Weakland*, 339 Or. 504, 511 (2005). "[C]ourts employ a broad definition of what could have been litigated." *Drews v. EBI Cos.*, 310 Or. 134, 141 (1990). Defendant could have litigated the unenforceability of the interest rate term in the state court proceeding, but apparently did not. Thus, claim preclusion might apply in this case, but for the consideration that the Court discusses next.

PAGE 6 – ORDER

*v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *see also Dreith v. Nu Image, Inc.*, 648 F.3d 779, 786 (9th Cir. 2011) (noting that a district's court decision whether to enter a default judgment is reviewed for abuse of discretion). In *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), the Ninth Circuit set out factors to guide a district court's consideration of whether to enter a default judgment. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 852 (9th Cir. 2007) (noting that *Eitel* "set[s] out factors to guide district court's determination regarding the appropriateness of granting a default judgment"). The Ninth Circuit in *Eitel* held:

> Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

782 F.2d at 1471-72. Further, the "starting point" of the court's analysis "is the general rule that default judgments are ordinarily disfavored." *Id*. at 1472.

The Court agrees with Judge You's analysis of the *Eitel* factors, with one critical exception. As to the fourth factor, the sum of money at issue in the action, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *Strickland v. Citizens Bank, N.A.*, 2024 WL 195651, at *6 (D. Or. Jan. 18, 2024) (quotation marks omitted). "If the sum of money at stake is completely disproportionate or inappropriate, default judgment is disfavored." *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1071 (D. Ariz. 2006). Judge You found that the amount at issue under the terms of the Note *when the Complaint was filed*—$293,613.66, which includes both principal and interest— did not weigh heavily against entering default judgment. Now, almost one full year after filing the Complaint and almost two full years since the event of default under the Note, circumstances

have changed due to the effect of charging interest at the rate of 12 percent *per month*. The amount at stake now is approaching one million dollars. The Court finds the amount at issue to be grossly disproportionate in light of the seriousness of Defendant's conduct and concludes that this *Eitel* factor outweighs any counterbalancing factors. The Court therefore denies entry of default judgment in the amount requested, which includes the exorbitant interest rate specified under the Promissory Note.

In its supplemental briefing, Plaintiff requests *in the alternative* that, if the Court refuses to award Plaintiff an amount that includes the Promissory Note's stated interest rate, the Court should instead award prejudgment and post-judgment interest on the principal sum at the statutory rate of nine percent per annum. The Court construes Plaintiff's alternative request as an alternative motion for entry of default judgment awarding the principal sum plus prejudgment and post-judgment simple interest at nine percent per annum as provided under ORS § 82.010(1). Under this formula, the amount of prejudgment interest due after 21 months of default would be approximately $13,294. Now, the balance of the *Eitel* factors tips in favor of entering this default judgment. The Court therefore grants Plaintiff's alternative motion to enter default judgment and awards to Plaintiff the principal sum of $84,406.90 plus prejudgment simple interest at nine percent per year from July 6, 2022 until entry of judgment.

As for the applicable rate of post-judgment interest, however, "[a]s a general rule, in diversity actions, state law determines the rate of prejudgment interest, and postjudgment interest is governed by federal law." *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1107 (9th Cir. 1998) (cleaned up). Federal law provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961(a). Section 1961(a) further provides that "interest shall be calculated from the date of the entry of the judgment, at a

rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding[] the date of the judgment."

The Ninth Circuit has recognized that an "exception to § 1961 exists when the parties contractually agree to waive its application." *Fidelity Fed. Bank, FSB v. Durga Ma Corp.*, 387 F.3d 1021, 1023 (9th Cir. 2004). "There must be a 'specific agreement' 'on this specific issue,'"—*i.e.*, a sufficient manifestation of the parties' intent to override default provisions of § 1691. *Oreo Corp. v. Winnerman*, 642 F. App'x 751, 755 (9th Cir. 2016) (quoting *Durga Ma Corp.*, 387 F.3d at 1023). The Ninth Circuit has recognized such intent when "the parties specifically agreed that the contract rate of interest would be applied even after judgment was entered." *Citicorp Real Est.*, 155 F.3d at 1108. On the other hand, a contractual choice-of-law clause, without more, does not demonstrate an intent to override § 1961. *Durga Ma Corp.*, 387 F.3d at 1023. District courts within the Ninth Circuit have also declined to find sufficient intent to override § 1961 in contractual provisions governing an agreement's generally applicable interest rate. *See, e.g.*, *Jou v. Adalian*, 2015 WL 7451160, at *4 (D. Haw. Nov. 23, 2015) ("[C]ontractual provisions regarding interest generally, absent a specific reference to post-judgment interest, are insufficient to demonstrate a clear and unequivocal intent to waive § 1961."); *Cataphora Inc. v. Parker*, 2012 WL 13657, at *7 (N.D. Cal. Jan. 4, 2012) ("[T]he contractual provision upon which Plaintiff relies is a provision for interest in the event of a late payment—not a provision that expressly states that the parties agreed to a specified prejudgment or postjudgment interest rate in the event of a dispute arising out of the contract, nor is it one that clearly expresses the parties' intent to 'contract around' section 1961.").

Here, neither the Promissory Note's default interest rate clause nor its choice-of-law clause sufficiently demonstrates the parties' intent to waive the application of § 1691 to the post-judgment interest rate. The Court therefore awards post-judgment interest at the applicable federal rate on the principal sum and prejudgment interest[4] from the date of judgment until paid in full.

### 2. Attorney's Fees

The Court agrees with the F&R's analysis and conclusion that Plaintiff should be awarded reasonable attorney's fees in the amount of $55,510.15 and costs in the amount of $2,757.25. For the reasons explained above, the Court declines to adopt the F&R's recommendation that this award should accrue post-judgment interest at 12 percent per month from the date of entry of judgment until paid in full. Even so, a party is entitled to post-judgment interest on an award for attorney's fees and costs. *See Perkins v. Standard Oil Co. of Cal.*, 487 F.2d 672, 675 (9th Cir. 1973) ("In our view there exists no real distinction between judgments for attorneys' fees and judgments for other items of damages. . . . [O]nce a judgment is obtained, interest thereon is mandatory without regard to the elements of which that judgment is composed."). Neither paragraph 15 of the Note, which provides for an award of attorney's fees, nor paragraph 16, which provides for costs, specifies an interest rate applicable to an award under those paragraphs or otherwise demonstrates an intent to override § 1691. The Court

---

[4] The Ninth Circuit has held that post-judgment interest "should be awarded on the entire amount of the judgment, including any pre-judgment interest." *Lagstein v. Certain Underwriters at Lloyd's of London*, 725 F.3d 1050, 1056 (9th Cir. 2013); *see also Air Separation, Inc. v. Underwriters at Lloyd's of London*, 45 F.3d 288, 291 (9th Cir. 1995) (recognizing that "postjudgment interest under 28 U.S.C. § 1961 applies to the prejudgment interest component of a monetary award").

therefore awards post-judgment interest at the applicable federal rate on Plaintiff's attorney's fees and costs from the date of judgment until paid in full.

**D. Conclusion**

The Court ADOPTS AS MODIFIED Judge You's Findings and Recommendation, ECF 20. The Court GRANTS IN PART AND DENIES in part Plaintiff's Motion for Entry of Default Judgment and Award of Attorney Fees and Costs, ECF 15, and enters judgment in Plaintiff's favor and against Defendant on Plaintiff's breach of contract claim for: (1) the principal sum of $84,406.90 plus prejudgment simple interest at the annual rate of nine percent on the principal sum from July 6, 2022, until the entry of judgment; (2) attorney's fees of $55,510.15 and costs of $2,757.25; and (3) post-judgment simple interest at the applicable federal rate on the principal sum plus prejudgment interest, attorney's fees, and costs from the date of the entry of judgment until paid in full.

**IT IS SO ORDERED.**

DATED this 10th day of April, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge

PAGE 11 – ORDER